STATE OF NEBRASKA, EX REL. CUSTER COUNTY AGRICULTURAL SOCIETY AND LIVE STOCK EXCHANGE, V. JOHN ROBINSON ET AL.

[FILED OCTOBER 11, 1892.]

1. **Constitution**: LAWS: TITLE OF ACT. The provision of section 11, article 3, of the constitution, that "No bill shall contain more than one subject, and the same shall be clearly expressed in its title," has no application to laws in force at the time of the adoption thereof.

29

2. ———: SPECIAL LEGISLATION: AGRICULTURAL SOCIETIES. The provision of section 12, chapter 2, Compiled Statutes, entitled "Agriculture," for the payment to agricultural societies complying with the provisions thereof, of a sum equal to three cents for each inhabitant from the county general fund of the several counties, does not conflict with the provisions of section 15, article 3, of the constitution.

3. ———: LEGISLATIVE POWER. The legislature has authority under the constitution to determine what purposes are matters of public concern, so as to render taxation therefor admissible.

4. Agricultural Societies: DEFINED. Agricultural societies are not corporations within the ordinary meaning of the term, but rather agencies adopted by the state for the purpose of promoting the interests of agriculture and manufacturing.

5. ———: AID BY TAXATION: MANDAMUS TO COUNTY BOARD. In a *mandamus* proceeding to compel the board of supervisors to include in the estimate of expenses for the current year the amount payable to an agricultural society by provision of statute, the fact that another society in the same county has complied with the conditions necessary to entitle it to demand payment from the county is no defense where it does not appear that such society is making any claim upon the county for funds under the provisions of the statute.

ORIGINAL application for *mandamus.*

*J. S. Kirkpatrick,* and *Sullivan & Gutterson,* for relator.

*E. P. Campbell, County Attorney, contra.*

POST, J.

This is an original application for a writ of *mandamus* to compel the respondents, who comprise the board of supervisors of Custer county, to include in their estimate of expenses for the year 1892 an amount sufficient to pay to the relator three cents for each inhabitant of said county for the years 1891 and 1892 in accordance with the provisions of section 12, chapter 2, Compiled Statutes, entitled "Agriculture." It appears from the allegations of the petition, none of which are denied, that the relator is an agri-

cultural society duly and legally organized in conformity with the statute in question, and that it has complied with all the requirements of law to entitle it to demand from the county the sum of money provided for by the section above referred to. The first objection raised by the respondents is that the law is unconstitutional for the reason that the title of the original act is not sufficiently comprehensive to include the section under consideration, which provides for payment out of the county general fund to county agricultural societies complying with the requirement thereof, a sum in each year equal to three cents for each inhabitant of the several counties. The act in question was passed by the territorial legislature in the year 1866 and at the time of its passage contained the features which it is now claimed render it unconstitutional and void. Although it has been amended frequently it is conceded that the amendments are not material to the questions raised and need not for that reason be noticed. The provisions of the constitution with reference to titles of acts have no application to laws then existing. It was expressly provided by the constitution of 1866, section 1, article 11, that laws then in force should remain in force until repealed or amended by the legislature, and the same provision is found in section 1, article 16, of our present constitution.

Second—It is urged as an objection to the law that it contravenes section 15, article 3, of the constitution, which provides that "The legislature shall not pass local or special laws * * * granting to any corporation, association, or individual any special or exclusive privilege, immunity, or franchise whatever." We are unable to perceive wherein the law is susceptible of such a construction. The limitation contained in the above section of the constitution was evidently intended as a remedy for the evil of special legislation and cannot by any reasonable or natural construction be held to apply to the act under consid-

eration. It has been frequently held by this court that a law which is general and uniform throughout the state, and operates alike upon all persons or localities which come within the relations and circumstances provided for, is not objectionable to the constitution or wanting in uniformity. (*State v. Berka*, 20 Neb., 375; *Lancaster Co. v. Trimble*, 33 Id., 121.) The act in question is certainly uniform in its operation, and applicable alike to all counties in the state, and is in no sense a special law within the meaning of the constitution.

Third—As a general rule, under the constitution the legislature is invested with authority to determine what purposes are matters of public concern, so as to render taxation admissible. (Cooley, Taxation, 103.)

There has been no reason suggested in the argument, and none occurs to us, for excluding agricultural and horticultural exhibitions from the list of public enterprises for which taxes may be imposed. It is provided by section 13 of the act that premiums shall be awarded for improvement of the soil, crops, tillage, manures, implements, stock, articles of domestic industry, and such other articles, productions, and improvements as they (the society) may deem proper, and best calculated to promote the agricultural and manufacturing interests of the county and state. Agricultural societies are not corporations in the ordinary sense of the term, but rather agencies of the state created for the purpose of assisting in promoting our most important industry. Among the general purposes for which taxes are imposed, Adam Smith enumerates: 1. Public works and institutions for facilitating the commerce of society. 2. Institutions for the education of youth. 3. Institutions for the instruction of people of all ages. Doctor Wayland, in his work on the same subject, includes among the purposes for which public funds may be expended, expenses for maintaining education, which he classifies as common and scientific. (See also Cooley on Taxation, 106 and 107,

State v. Robinson.

·and cases cited.)   The purpose for which the money is appropriated is, when viewed in the light of authority, clearly one of public utility, and, therefore, permissible under the constitution.

Fourth—A further objection to the writ is raised in the answer, viz., that another society, to-wit, The Callaway Agricultural Society, is also duly organized and has complied with all the requirements of statute to entitle it to demand payment of the money provided by law.   There is no merit in this contention; since it does not appear that the Callaway Agricultural Society held an exhibition in either of the years in question, or that it makes any claim to contribution from the treasury of the county.   It is admitted that the amount due relator for the year 1891, was included in the estimate for that year, but that respondents refused to allow the claim or draw a warrant therefor.   It is further admitted that the general fund levy for the year 1891 has been exhausted in the payment of other legitimate expenses of the county, and that relator's claim for that year must be paid out of the levy for subsequent years.   That claim is a valid and subsisting indebtedness of the county and should have been included in the estimate for 1892, together with the amount payable to relator in that year.   The relator is entitled to the relief sought, and a peremptory writ of *mandamus* is

ALLOWED.

THE other judges concur.